IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

CHRISTOPHER ALAN ANDREWS PLAINTIFF

v. Civil No. 06-2073

FRANK ATKINSON, Sheriff, Sebastian County, Arkansas; JAIL NURSE CRYSTAL REED; DR. TOM TINSMAN; CAPTAIN MIKE CONGER, Jail Administrator; and DEPUTY HICKS DEFENDANTS

**REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

The plaintiff filed this civil rights action pursuant to 42 U.S.C. § 1983. He proceeds pro se and in forma pauperis.

Plaintiff is currently incarcerated in Fort Supply, Oklahoma. The events at issue in this lawsuit occurred while the plaintiff was incarcerated at the Sebastian County Detention Center. Specifically, plaintiff contends he was denied adequate medical care.

Defendants filed a summary judgment motion (Doc. 19). To assist plaintiff in responding to the motion, a questionnaire was propounded (Doc. 25).

Plaintiff filed a timely response to the questionnaire (Doc. 26). The summary judgment motion is before the undersigned for issuance of this report and recommendation.

**Background**

A warrant was issued for Andrew's arrest on a petition to revoke his suspended sentence on March 6, 2006. *Plaintiff's Response* (Doc. 26) (*hereinafter Resp.*) at ¶ 1. Andrews was arrested and booked into the Sebastian County Detention Center (SCDC) on April 26, 2006, on



AO72A
(Rev. 8/82)

a petition to revoke his suspended sentence, a fugitive from justice charge, and an Arkansas Department of Correction (ADC) hold. *Id.* at ¶ 2. Andrews remained incarcerated there until February 9, 2007. *Id.* at ¶ 45.

When Andrews was booked in, his personal property was inventoried. *Defts' Ex.* 1 at page 6. The inventory form indicates Andrews had no cash, a pair of glasses, three types of medication, a pair of shoes, and a knife. *Id.* The form does not list the type of medication. *Id.* However, Andrews states he told them what type of medication was in his property and wrote it down upon entering the detention center. *Resp.* at ¶ 3.

A medical questionnaire was completed as part of the booking process. *Resp.* at ¶ 4. Andrews indicated he had heart problems (three heart attacks), a head injury (his neck had been broken in 1995), bad knees, and mental illness (he was being treated at ACT in Tulsa). *Id.*

He indicated he was being treated by Dr. Bumbgardner and William Theripest at Associated Centers for Therapy in Tulsa. *Id.* at ¶ 5. Andrews stated he was taking Zoloft, Wellbutrin, and Serequel *Id.*

On an intake questionnaire Andrews indicated he was afraid to be placed in the general population because he took medication for post traumatic stress disorder. *Resp.* at ¶ 6(A). He stated he freaked out easily. *Id.* Andrews was not placed in general population. *Id.* at ¶ 6(B).

Andrews signed a waiver of extradition on May 5th agreeing to return to Arkansas for trial on a theft of property charge. *Resp.* at ¶ 7. On May 10th, Andrews submitted a request asking to know when his next court date was. *Id.* at ¶ 8. In response, he was told he had no specific court date but that it would be at the call of the court. *Id.*

On May 19th, Andrews submitted a grievance complaining that his cell was overcrowded and asking that it be emptied down to two men per cell. *Resp.* at ¶ 9(A). In response, Sgt. Ritter told Andrews that because of his protection status in CC pod, he would remain where he was. *Id.* If he wanted to fill out a protection release, he was told he could do so. *Id.*

On May 19th, Andrews submitted a grievance complaining that medication was handed out by deputies rather than LPN's or RN's. *Resp.* at ¶ 10(A). Sgt. Ritter responded that the deputies would continue to pass out meds. *Id.*

Andrews was not satisfied with this response so Sgt. Taulbee responded to the grievance by telling Andrews that the deputies only assisted him in receiving medication that had been prescribed by the doctors or nurses. *Resp.* at ¶ 10(B). Andrews was told that he was able to see the directions for the medication on the cards and that when the medication was passed out both the deputy and he had to sign at the time the medication was given. *Id.* Andrews indicated he was receiving Serequel, Wellbutrin, and Zoloft. *Id.* at ¶ 10(C).

On May 19th, Andrews submitted a grievance about the mattresses being infested with germs. *Resp.* at ¶ 11. He was informed that germicidal cleaner is used on the mattresses before re-issue. *Id.* However, Andrews contends you cannot disinfect a foam mattress. *Id.*

On May 21st, Andrews complained that he had not received the three grievances he submitted on May 19th back. *Resp.* at ¶ 12. In response, Sgt. Ritter told him to be patient and wait. *Id.*

On May 21st, Andrews complained that he had submitted an in forma pauperis form to Officer Dutton Friday morning and it was supposed to be returned to him Friday. *Resp.* at ¶ 13.



AO72A
(Rev. 8/82)

Andrews stated he had not received it back yet. *Id.* In response, Sgt. Ritter told Andrews to be patient and wait. *Id.*

On May 21st, Andrews submitted a grievance form saying that he had asked Officer Sosbee at 8:00 p.m. on Friday, May 19th, for a grievance form and he had not brought him one. *Resp.* at ¶ 14. Sgt. Ritter responded that he would check into it. *Id.* After checking into it, Sgt. Ritter noted that Andrews had been provided with grievance forms. *Id.*

On June 3rd, Andrews complained that he had not received back a grievance he submitted on Sunday, May 28th. *Resp.* at ¶ 15. He said it was filled out correctly. *Id.* Sgt. Ritter responded there was no record of Andrews submitting a grievance on that date and he would have to resubmit it. *Id.*

Andrews complained again on June 4th that he had submitted a grievance on May 28th about overcrowding. *Resp.* at ¶ 16. He asked where it was. *Id.* He stated that he had other people sign the back. *Id.* Sgt. Ritter responded that he had looked at the grievances Andrews submitted and he found no such grievance. *Id.* Andrews was told to re-submit it. *Id.*

On June 4th, Andrews submitted a grievance stating he asked Officer Freeman about soap, toilet paper, and toothpaste and Freeman stated he wasn't doing it today. *Resp.* at ¶ 17(A). Andrews also asked for a grievance and was told Freeman had until 7 p.m. to get it for Andrews. *Id.* Andrews stated when he asked for a grievance it should be brought to him shortly not 9 hours later. *Id.* Andrews asked that Freeman be told to do his job. *Id.*

In response, Sgt. Ritter stated the deputies have until the end of their shift to give out grievances. *Resp.* at ¶ 17(B). Andrews was informed he would be given the supplies. *Id.*



AO72A
(Rev. 8/82)

On June 6th, Andrews complained he was still cramped up in a two-man cell with four others. *Resp.* at ¶ 18. Sgt. Ritter responded that everyone in Andrew's pod was PC [protected custody] status and if he wanted to be released he could sign a PC release form. *Id.*

On June 12th, Andrews complained that Dutton had received, read, and discussed Andrew's June 10th grievance. *Resp.* at ¶ 19. He complained about deputies not following procedure. *Id.* Sgt. Ritter responded that the grievance was not filled out correctly. *Id.* Next time Andrews was instructed to write in the space provided and on the back. *Id.* Sgt. Ritter also said he had previously answered Andrew's grievance. *Id.*

On June 12th, Andrews submitted a grievance complaining that he had been there a month and had not seen a doctor or nurse. *Resp.* at ¶ 20(A). He said he had signed a release form for them to receive his medical records. *Id.* He stated he had sent grievances and sick call slips in but got no response. *Id.* He stated he had been without his medication for a month. *Id.*

Sgt. Ritter responded that they had no record of any grievances about medical. *Resp.* at ¶ 20(B). If Andrews had any medical problems, he was instructed to fill out a medical slip. *Id.* Andrews knew that to obtain non-emergency medication treatment at the SCDC, an inmate must complete a written request for medical treatment. *Id.* at ¶ 22.

Andrews was asked to explain why none of the grievances he submitted prior to June 12th mentioned his being out of medication or his needing to see a doctor or nurse. He responded: "Kept being told–give it another day by Sgt. Ritter." *Resp.* at ¶ 20(C). Andrews also maintains he had filled out requests for medical treatment but none had been returned to him. *Id.* at ¶ 21(B).

Andrews submitted a request for medical treatment on June 15th stating that he was having severe anxiety attacks and suffered from post traumatic stress disorder, schizophrenia, and severe depression. *Resp.* at ¶ 21(A). He was prescribed 100 mg. of Zoloft per Dr. Tinsman. *Id.*

Prior to June 15th, Andrews asserts he received no prescription medication. *Resp.* at ¶ 21(C). However, Nurse Reed noted on the medical treatment report dated June 15th that Andrews was running out of meds from the clinic in Tulsa and the Zoloft was ordered for Andrews. *Id.* at ¶ 20(D).

On June 21st, Andrews pled no contest to the petition to revoke his suspended sentence in the Sebastian County Circuit Court. *Resp.* at ¶ 23. On June 27th, Deputy Sowa reported that medications had been dropped off for Andrews and given to the supervisor. *Id.* at ¶ 24.

On June 27th, Andrews requested medical treatment stating that his mind was continually racing and he could not rest at night. *Resp.* at ¶ 25. He requested 600 mg of Serequel at night. *Id.* He also mentioned he was having nightmares and hearing voices. *Id.*

Andrews was seen by Dr. Tinsman who noted Andrews was seeking medication for mental illness. *Resp.* at ¶ 26(A). Andrews was diagnosed with depression with schizo affective features. *Id.* Dr. Tinsman prescribed Serequel and continued the Zoloft. *Id.* Another attempt was made to get a copy of Andrews' records from ACT. *Id.* at ¶ 26(B).

Andrews filed this lawsuit on June 21st. *Resp.* at ¶ 27. On July 6th, Andrews was seen by Dr. Tinsman and Nurse Reed for a follow-up appointment. *Id.* at ¶ 28. Dr. Tinsman diagnosed Andrews with "depression bipolar controlled." *Id.* Andrews was continued on his

medication regime and was to be rechecked as needed. *Id.* Andrews was seen by Dr. Tinsman on July 12th and he re-ordered Andrews' Zoloft. *Resp.* at ¶ 29.

According to the SCDC medication logs, prior to the June 12th medical request, Andrews received Zoloft from May 6th to May 12th, *defts' ex.* 2 at pages 18-19, Wellbutrin from May 6th to May 14th and from June 1st to June 5th, *defts' ex.* 2 at pages 18-19 and *resp.* at ¶ 31, and Serequel from May 6th to June 3rd, *defts ex.* 2 at pages 18-19. With respect to the Serequel, Andrews contends that many of the initials on the log are not his. *Resp.* at ¶ 32.

All decisions regarding Andrews medical care and treatment at the SCDC were made by Nurse Crystal Reed or Dr. Tinsman. *Resp.* at ¶ 33. Sheriff Frank Atkinson was not personally involved in making any decisions regarding Andrews' medical care or treatment. *Id.* at ¶ 34. Captain Mike Conger was not personally involved in making any decisions regarding Andrews' medical care or treatment. *Id.* at ¶ 35. Deputy Hicks was not personally involved in making any decisions regarding Andrews' medical care or treatment. *Id.* at ¶ 36.

Andrews was asked whether he contended a custom or policy of Sebastian County was the moving force behind the violation of his constitutional rights. He responded: "Yes." *Resp.* at ¶ 37. He was then asked to describe in detail the custom or policy and how it operated to deprive him of his federal constitutional rights. He replied: "having the guard pass out medication etc. They quite often hand out the wrong pills to the wrong people and sometime pass them out not at all. I have wittness's to this fact." *Id.*

Andrews was asked to describe in detail how Nurse Reed was deliberately indifferent to his serious medical needs. He indicated that when he was first booked into the SCDC he told



AO72A
(Rev. 8/82)

the booking officer that he was psychotic and suffered from post traumatic stress disorder and had his medications with him. *Resp.* at ¶ 38. Andrews states he urged them to get his records. *Id.* Andrews states he knows they did not try to obtain his records because his doctor will not release the records without first sending him a release form which he must sign and return. *Id.* When Andrews saw Dr. Tinsman, Andrews indicates the doctor asked Nurse Reed why Andrews' records had not been received and Nurse Reed responded that she had not called about the records. *Id.*

Andrews was also to describe how Dr. Tinsman exhibited deliberate indifference to his serious medical needs. Andrews responded: "Dr. Tinsman did not so much." *Resp.* at ¶ 39. Andrews indicated Dr. Tinsman "chewed" Nurse Reed out about not obtaining the records and then made sure Andrews had his medication. *Id.* Andrews received all medication prescribed to him by Nurse Reed or Dr. Tinsman. *Resp.* at ¶ 40.

**Summary Judgment Standard**

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986), the record "show[s] that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *National Bank of Commerce v. Dow Chemical Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *National Bank*, 165 F.3d at 607 (*citing Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). "A case founded on speculation or suspicion is insufficient to survive a motion for summary judgment." *Id.* (*citing Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)).

**Discussion**

Defendants have now moved for summary judgment. They contend there is no evidence Andrews was denied any necessary medical treatment.

"[W]hen the State takes a person into its custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being." *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998)(citation omitted). "Deliberate indifference to an inmate's serious medical needs violates the Eighth Amendment as applied to the States by the Fourteenth Amendment." *Hartsfield v. Colburn*, ___ F.3d ___, 2007 WL 2050849, *2 (8th Cir. July 19, 2007). In this circuit it is now settled law that deliberate indifference is the appropriate standard of culpability for all claims that detention center officials have denied inmates, whether in pretrial or convicted status, adequate medical care. *See Butler v. Fletcher*, 465 F.3d 340, 344 (8th Cir. 2006).

"In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429

U.S. 97, 106, 97 S. Ct. 285, 50 L. Ed. 2d 251 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen*, 205 F.3d 1094, 1096 (8th Cir. 2000)(*quoting Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997)). Additionally, "'[t]he prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation.'" *Jolly*, 205 F.3d at 1096 (*quoting Estate of Rosenberg v. Crandell*, 56 F.3d 35, 37 (8th Cir.1995)). *See also Gregoire v. Class*, 236 F.3d 413, 417 (8th Cir. 2000)("To establish a constitutional violation, it is not enough that a reasonable official should have known of the risk, a plaintiff must establish that the official in question did in fact know of the risk.").

"Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'" *Hudson v. McMillian*, 503 U.S. 1, 9, 112 S. Ct. 995, 1000, 117 L. Ed. 2d 156 (1992). "A medical need is serious if it is obvious to the layperson or supported by medical evidence." *Moore v. Jackson*, 123 F.3d 1082, 1086 (8th Cir. 1997) (per curiam) (internal quotation and citation omitted).

"[T]he failure to treat a medical condition does not constitute punishment within the meaning of the Eighth Amendment unless prison officials knew that the condition created an excessive risk to the inmate's health and then failed to act on that knowledge." *Long v. Nix*, 86



AO72A
(Rev. 8/82)

F.3d 761, 765 (8th Cir. 1996). In *Dulany v. Carnahan*, 132 F.3d 1234 (8th Cir. 1997), the Eighth Circuit said:

> As long as this threshold is not crossed, inmates have no constitutional right to receive a particular or requested course of treatment, and prison doctors remain free to exercise their independent medical judgment. Deliberate indifference may be demonstrated by prison guards who intentionally deny or delay access to medical care or intentionally interfere with prescribed treatment, or by prison doctors who fail to respond to prisoner's serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L. Ed. 2d 251 (1976). Mere negligence or medical malpractice, however, are insufficient to rise to a constitutional violation. *Id.* at 106, 97 S. Ct. at 292.

*Dulany*, 132 F.3d at 1239. *See also Tlamka v. Serrell*, 244 F.3d 628, 633 (8th Cir. 2001).

In this case, Andrews advised the booking officer that he was being treated for mental illness and taking Zoloft, Wellbutrin, and Serequel. *Resp.* at ¶ 5. He maintains defendants exhibited deliberate indifference to his serious medical needs in the following ways: by not providing him with medical treatment prior to June 15th; by not ensuring that his medical records were obtained; by not providing him with his prescription medication until June 15th; and by allowing guards to pass out medication.

With respect to defendants' alleged failure to provide Andrews with medical treatment prior to June 15th, we find no genuine issues of material fact as to whether defendants were deliberately indifferent to Andrews' serious medical needs. First, Andrews was aware of the requirement that inmates in need on non-emergency medical care at the SCDC make the request in writing. *Resp.* at ¶ 22. Second, Andrews submitted multiple grievances raising a variety of issues. *See Defts' Ex.* 3. The only one mentioning any medical issue prior to June 12th was the May 19th one that complained about medication being handed out by the deputies. *Defts' Ex.*



AO72A
(Rev. 8/82)

3 at page 3. None mentioned his need for prescription refills or his need to see the doctor or nurse. *Defts' Ex.* 3.

Third, even if we assume, as Andrews argues, that he submitted requests for medical care but did not receive copies back, *resp.* at ¶ 21(B), his claim nevertheless fails because he has not shown that he suffered any adverse effect. "When the inmate alleges that a delay in medical treatment rises to the level of an Eighth Amendment violation, the objective seriousness of the deprivation should also be measured by reference to the *effect* of delay in treatment. To establish this effect, the inmate must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment ..." *Laughlin v. Schriro*, 430 F.3d 927, 929 (8th Cir. 2005)(internal quotation marks and citations omitted).

With respect to the failure of Nurse Reed to obtain Andrews' records, we believe this failure at most amounts to allegations of negligence on Reed's part. Mere negligence or medical malpractice is insufficient to establish a constitutional violation. *See Dulany v. Carnahan*, 132 F.3d 1234, 1239 (8th Cir. 1997).

Although Andrews asserts he had not received any of his prescription medications prior to June 15th, *resp.* at ¶ 21(C), the summary judgment record clearly contradicts this assertion. On May 19th, Andrews submitted a grievance about the deputies being allowed to dispense medication rather nurses. *Defts' Ex.* 3 at page 3; *Resp.* at ¶ 10(A). Andrews was asked to indicate what medications he was receiving on this date. *Resp.* at ¶ 10(C). He responded: Zoloft, Wellbutrin, and Serequel. *Id.* The medication logs also indicate Andrews received these medications on certain days during May and early June. *Defts' Ex.* 2 at pages 18-19. Andrews agrees he received the medications on some of these days but disputes that all of the initials on



AO72A
(Rev. 8/82)

the logs are his. *See Resp.* at ¶¶ 30-32. *See e.g., Beck v. Skon*, 253 F.3d 330, 333 (8th Cir. 2001)("Like any other civil litigant [a pro se litigant is] required to respond to defendants' motion with specific factual support for his claims to avoid summary judgment").

With respect to Andrews' claim based on the guards being allowed to pass out medication, we find no claim of constitutional dimension is stated. *See e.g., Booker v. Herman*, 2006 WL 2457230, *5 (N.D. Ind. Aug. 22, 2006)("While it might be a good practice, tradition, or even state law to require that only medical staff can deliver medication, the Constitution does not prohibit guards from distributing medication to inmates. This allegation states no claim upon which relief can be granted").

Finally, with respect to Sheriff Frank Atkinson, Captain Mike Conger, and Deputy Hicks there is no evidence these defendants were personally involved in making any decisions regarding Andrews medical care or treatment. In fact, Andrews concedes they were not. *Resp.* at ¶¶ 34-36. *Keeper v. King,* 130 F.3d 1309, 1314 (8th Cir. 1997)(no evidence that the defendants were doctors or were personally involved in making medical decisions about treatment); *Mark v. Nix*, 983 F.2d 138, 139-40 (8th Cir. 1993)(section 1983 liability requires some personal involvement or responsibility).

## Conclusion

For the reasons stated, I recommend that the defendants' motion for summary judgment (Doc. 19) be granted.

**The parties have ten days from receipt of the report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are**

**reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of August 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE



AO72A
(Rev. 8/82)